UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FORGE UNDERWRITING LTD.,

> Petitioner,

-against-

AMTRUST FINANCIAL SERVICES, INC.,

> Respondent.

Case No. 1:23-cv-06201 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Petitioner insurer Forge Underwriting Ltd. ("Petitioner" or "Forge") seeks to avoid arbitrating a coverage dispute with its insured AmTrust Financial Services, Inc. ("Respondent" or "AmTrust"). Now before the Court are (1) Forge's motion under Federal Rule of Civil Procedure 65(a) for a preliminary injunction enjoining AmTrust from proceeding against Forge in an arbitration (as well as a later request in its brief for a permanent injunction), and (2) AmTrust's motion to compel Forge to participate in that arbitration. *See* ECF No. 2 ("Pet. Mot."); ECF No. 4 ("Pet. Mem."); ECF No. 16 ("Resp't Mot."); ECF No. 17 ("Resp't Mem."); ECF No. 22 ("Pet. Opp'n"); ECF No. 24 ("Resp't Reply"). For the reasons set forth below, AmTrust's motion is DENIED because Forge has not agreed to arbitrate and Forge's motion for an injunction is GRANTED.

## BACKGROUND

AmTrust obtained several directors-and-officers-liability insurance policies from various insurers, covering the period spanning November 29, 2018, to November 29, 2024. *See* ECF No. 1 ("Pet. to Stay Arbitration") ¶ 13; ECF No. 1-2 ("Del. Compl.") ¶¶ 3-5; ECF No. 15 ("Answer to Verified Pet. and Countercl.") ¶ 13. The primary insurance policy (the "Primary Policy") provides up to $5 million in coverage. *See* ECF No. 1-3 at 4. The additional policies

are excess-liability policies, which means that they "provide coverage for losses that exceed the limits of the primary policy." *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 848 (S.D.N.Y 2018). These excess-liability policies are structured in layers of coverage, such that when AmTrust exhausts a lower layer of insurance, it then draws on the coverage provided by a higher layer of insurance. Multiple insurers may also be responsible for specific portions of coverage at a given layer. For example, at the third layer of excess coverage for AmTrust, two insurance companies – Markel Bermuda Limited ("Markel") and Allianz Global Risk US Insurance Company ("Allianz") – are each responsible for $2.5 million out of $5 million in excess coverage, that is, 50 percent each. *See* ECF No. 1-1 at 8, 13. Meanwhile, at the fifth layer of excess coverage, four insurance companies – Aspen Syndicate 4711 ("Aspen"), Forge, Markel, and Arch Insurance Company ("Arch") – are respectively responsible for 36.61 percent, 21.39 percent, 24 percent, and 18 percent of up to $15 million in coverage in excess of $25 million. *See id.* at 18 (Markel has $3.6 million portion of $15 million limit of liability); *id.* at 52-53 (Policy No. B0509FINFW1800560 covers 58 percent of the limit of liability, and liability under this policy is "several not joint"); *id.* at 65 (the 58 percent of coverage is split into two shares, with Aspen responsible for a 36.61 percent share); ECF No. 3 ¶ 5 (Forge and Aspen together issued Policy No. B0509FINFW1800560); Del. Compl. ¶ 1 n.1 (Arch is the fourth insurer responsible for the coverage tier of $15 million in excess of $25 million).

The policy issued by Forge and Aspen for the fifth excess layer (the "Forge Policy") has several clauses whose construction is central to this dispute. To begin with, in a section titled "RISK DETAILS," a subsection titled "CHOICE OF LAW & JURISDICTION" provides:

> Unless stated herein to the contrary, this (Re)Insurance shall be governed by and construed in accordance with the laws of US New York and the exclusive jurisdiction of the US New York courts.

ECF No. 1-1 at 32.  Subsequently, in a section titled "MARSH EXCESS LAYER POLICY," a

subsection titled "Governing Law and Jurisdiction" ("Section 7") refers back to the Risk Details

section and states:

> The constructions, interpretation and meaning of the terms,
> exclusions limitations and conditions of this excess policy shall be
> determined in accordance with the laws of the state or country
> specified in the RISK DETAILS of this policy, and *any dispute*
> *arising hereunder will be subject to the exclusive jurisdiction of the*
> *courts of the state or country specified in the RISK DETAILS of*
> *this policy.*

*Id.* at 38 (emphasis added) (collectively with the Choice of Law & Jurisdiction Provision, the

"Forum-Selection Provisions").  Another section, titled "Dispute Resolution" ("Section 8"),

provides:

> 8.1     In the event that a dispute arises between the Insurer and
> the Insured under this excess policy, the provisions of the Primary
> Policy are incorporated into this excess policy for the purposes of
> determining the dispute resolution procedures applicable to this
> excess policy.
>
> 8.2     In the event that a dispute arises between the Insurer and
> the Insured under this excess policy in relation to matters that are
> also the subject of a dispute between the Insured and the insurers
> of any Underlying Insurance then those disputes shall be heard
> together in the same court or arbitration proceedings.

*Id.* (emphasis omitted).  The Forge Policy elsewhere defines "Underlying Insurance" as "the

Primary Policy together with any and all excess policies providing together the amount of cover

specified at item (b) of the limit of liability in the RISK DETAILS of this policy, and any

policies replacing any of them."  *Id.* at 35 (emphasis omitted).  As AmTrust notes, it is

undisputed that the policies issued by Markel for the third and fifth excess layers (the "Markel

Policies") qualify as "Underlying Insurance" policies for purposes of Section 8.2.  *See* Resp't

Mem. at 6.

Unlike the Forge Policy, the Markel Policies contain identical sections titled

"ALTERNATIVE DISPUTE RESOLUTION."  ECF No. 1-1 at 11-12, 21-22.  Those sections

state in relevant part:

> 1.      It is agreed that any dispute arising out of or in connection
> with this policy, including any question regarding its existence,
> validity or termination, shall be referred to and finally resolved
> solely by Arbitration or Alternative Dispute Resolution (ADR).
>
> 2.      This policy shall follow the terms of the FOLLOWED
> POLICY with respect to Arbitration or ADR only when said terms
> require the dispute to proceed in Hamilton, Bermuda; London,
> England; or Toronto or Vancouver, Canada.
>
> 3.      In the event the applicable FOLLOWED POLICY does not
> provide for Arbitration or ADR in Hamilton, Bermuda; London,
> England; or Toronto or Vancouver, Canada, the Insured shall
> select one of the following venues and procedural laws for such
> Arbitration or ADR:
>
>> (i)      Arbitration held in Hamilton, Bermuda under The
>> Bermuda International Conciliation and Arbitration Act of
>> 1993 (exclusive of the Conciliation Part of such act) as may
>> be amended and supplemented, or under the English
>> Arbitration Act of 1996 as may be amended and
>> supplemented, which Acts are deemed incorporated by
>> reference into this clause, or
>>
>> (ii)     Arbitration held in London, England under the
>> English Arbitration Act of 1996, as may be amended and
>> supplemented, which Act is deemed incorporated by
>> reference into this clause, or
>>
>> (iii) Arbitration held in Toronto or Vancouver, Canada
>> under the English Arbitration Act of 1996, as may be
>> amended and supplemented, which Acts are deemed
>> incorporated by reference into this clause.

*Id.* at 11, 21.

In 2019, AmTrust and its directors were sued in this District for alleged acts of federal

securities fraud.  *See* Answer to Verified Pet. and Countercl. ¶ 53; Complaint, *Martínek v.*

*AmTrust Fin. Servs., Inc.*, 2022 WL 16960903 (S.D.N.Y. Aug. 30, 2019) (No. 19-cv-08030

(KPF)); *cf. Ira S. Bushey & Sons v. W.E. Hedger Transp. Corp.*, 167 F.2d 9, 12 & n.2 (2d Cir.

1948) ("It is of course thoroughly settled that the court takes judicial notice of its own records,"

including "records of other cases in the same court."). The parties to the *Martínek* case

ultimately reached a settlement agreement. *See* Final Judgment, *Martínek*, 2022 WL 16960903

(S.D.N.Y. Nov. 16, 2022) (No. 19-cv-08030 (KPF)). But when AmTrust sought coverage from

its insurers, it was denied. *See* Del. Compl. ¶ 15.

AmTrust thereafter filed suit in Delaware Superior Court against its insurers, including

Forge, on April 1, 2022. *See generally id.* When Markel invoked the arbitration clause in the

Markel Policies, AmTrust voluntarily dismissed Markel from the case. *See* ECF No. 3-1 at 8-9.

AmTrust settled with two other excess insurers and voluntarily dismissed them as well. *See id.*

at 3. On June 20, 2022, Forge and Aspen filed a motion to dismiss, which AmTrust opposed.

*See id.* at 3-5. The case, including claims against Forge, Aspen, Allianz, and Arch, was

subsequently removed to federal court in Delaware on September 15, 2022. *See* ECF No. 3-2

at 5. On November 22, 2022, Allianz moved to dismiss; on January 20, 2023, it also moved for

recusal of the judge. *See id.* at 5-6. AmTrust settled with Arch and agreed to dismiss its claims

against Arch on June 9, 2023. *See id.* at 7. AmTrust has also represented to the Court that

"AmTrust and Aspen have executed a settlement agreement, and Aspen will be voluntarily

dismissed from the [Delaware lawsuit] in accordance with the terms of that settlement

agreement." Answer to Verified Pet. and Countercl. ¶ 55. Consequently, "Forge and Allianz are

the only remaining non-settling defendants" still participating in the Delaware court proceedings.

*Id.*

On June 28, 2023, AmTrust served Forge and Markel (but not Allianz) with notices and

demands for arbitration based on the Forge Policy and the Markel Policies. *See* ECF No. 1-1 at

2.  In response, Forge filed the instant petition seeking to enjoin AmTrust from prosecuting its arbitration demand against Forge, and a motion for a preliminary injunction.  *See generally* Pet. to Stay Arbitration; Pet. Mem.  AmTrust opposed the motion and filed its own motion to compel arbitration.  *See generally* Resp't Mot.; Resp't Mem.  The Court will first consider AmTrust's motion to compel, which informs the injunctive relief sought by Forge.

## LEGAL STANDARD

When considering a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), courts "apply a standard similar to that applicable for a motion for summary judgment," *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (quotation marks omitted) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).  Under this standard, "the Court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law."  *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013).  If the facts in the record are undisputed and "require the matter of arbitrability to be decided against one side or the other as a matter of law," the Court "may rule on the basis of that legal issue and avoid the need for further court proceedings."  *Zachman*, 49 F.4th at 101 (quoting *Meyer v. Uber Techs, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).

Under Section 2 of the FAA, commercial "agreement[s] . . . to submit to arbitration" are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has emphasized that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'"  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24 (1983)).  "[B]y its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (original brackets omitted) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  Still, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted).  And "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption [of arbitrability] does not apply to disputes concerning whether an agreement to arbitrate has been made."  *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011); *accord Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 413 (S.D.N.Y. 2016) ("[T]he presumption of arbitrability does not bear on the threshold issue of whether the parties entered into a binding agreement to arbitrate at all.").

In this context, the Court's role "is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected[,] or refused to arbitrate."  *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (quoting *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004)).  AmTrust contends – and Forge does not dispute – that Forge has refused to arbitrate.  Resp't Mem. at 15-16; *see Beijing Shougang*, 11 F.4th at 162 ("A party has refused to arbitrate if it commences litigation." (quotation marks omitted) (quoting *LAIF*, 390 F.3d at 198)).  Thus, the central issue is "whether a valid agreement or obligation to arbitrate exists" between Forge and AmTrust.  *Beijing Shougang*, 11 F.4th at 162 (quoting *LAIF*, 390 F.3d at 198).  This "threshold

question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022) (quoting *Nicosia*, 834 F.3d at 229).  The Forge Policy's Forum-Selection Provisions indicate that New York law applies, *see* ECF No. 1-1 at 32, and the parties appear to agree on this point, *see* Pet. Mem. at 11 (the Forge Policy "is expressly governed by New York law"); Resp't Mem. at 12 (relying on New York case law); *see also TCR Sports Broad. Holding, LLP v. WN Partner, LLC*, 214 N.E.3d 1137, 1139 (N.Y. 2023) (reaffirming that "New York's well-established rules of contract law . . . apply to arbitration agreements").

## DISCUSSION

### I. AmTrust's Motion to Compel Arbitration

AmTrust claims that Forge agreed to arbitrate pursuant to Section 8.2 of the Forge Policy. According to AmTrust, Section 8.2 is a single-action clause that incorporates by reference the Markel Policies (and thus their arbitration clauses) through the mention of consolidated "arbitration proceedings."  Resp't Mem. at 2.  AmTrust asserts that if Forge has a dispute under the Forge Policy with AmTrust "in relation to matters that are also the subject of a dispute between the Insured and the insurers of any Underlying Insurance," Section 8.2 directs that "those disputes shall be heard together in the same court or arbitration proceedings."  ECF No. 1-1 at 38.  Because AmTrust is proceeding with arbitration now with Markel in Toronto, AmTrust argues that the Court should compel Forge to participate in that "same" arbitration proceeding. *See* Resp't Mem. at 10-15.

Forge denies that it has agreed to arbitrate AmTrust's insurance claim.  Forge points out that neither the Primary Policy nor the Forge Policy contains an arbitration clause.  *See* Pet. Mem. at 10-11.  Indeed, the Forge Policy's Forum-Selection Provisions expressly provide for

"the exclusive jurisdiction of the US New York courts."  ECF No. 1-1 at 32.  Section 7 of the

Forge Policy reiterates that "*any dispute arising hereunder* will be subject to the *exclusive*

*jurisdiction of the courts of the state or country specified in the RISK DETAILS of this policy*" –

that is, New York.  *Id.* at 38 (emphasis added); *see Brooke Grp. Ltd. v. JCH Syndicate 488*, 663

N.E.2d 635, 637 (N.Y. 1996) ("[P]arties to a contract may freely select a forum which will

resolve any disputes over the interpretation or performance of the contract.  Such clauses are

prima facie valid and enforceable unless shown by the resisting party to be unreasonable."); *Atl.*

*Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) ("The

enforcement of valid forum-selection clauses, bargained for by the parties, protects their

legitimate expectations and furthers vital interests of the justice system." (quotation marks and

citation omitted)).  Forge further contends that the single fleeting reference to "arbitration

proceedings" in Section 8.2 of the Forge Policy does not incorporate by reference the Markel

Policies; indeed, Section 8.2 "does not even reference the Markel Polic[ies] or [their] arbitration

clause[s]."  Pet. Mem. at 12.  The only dispute-resolution procedures incorporated by reference

into the Forge Policy are the dispute-resolution procedures applicable to the Primary Policy

through Section 8.1, and the Primary Policy does not contain any arbitration clause.  Forge also

argues that even if it had agreed to arbitrate, AmTrust has waived any right to arbitrate by filing

the Delaware court action.  *See* Pet. Mem. at 16-19; Pet. Opp'n at 16-20.

   AmTrust counters by highlighting the fact that the Forum-Selection Provisions apply

"[u]nless stated herein to the contrary."  ECF No. 1-1 at 32.  Thus, according to AmTrust, the

Forge Policy "sets out just such an exception to the New York jurisdiction clause" in the form of

Section 8.2, which requires that the present dispute be heard in the Markel arbitration

proceeding.  Resp't Mem. at 4; *see also* Resp't Reply at 1.  AmTrust also denies that it waived its right to arbitrate.  *See* Resp't Mem. at 16-20; Resp't Reply at 6-9.

On balance, Forge has the better argument.  The Court holds that the Forge Policy does not incorporate by reference the Markel Policies' arbitration clauses, and Forge has not otherwise agreed to arbitrate its insurance-coverage dispute with AmTrust.  To be sure – and as AmTrust notes – the Second Circuit "long ha[s] held that 'a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement.'"  *Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 63 (2d Cir. 2007) (quoting *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venez.*, 991 F.2d 42, 48 (2d Cir. 1993)); *see* Resp't Mem. at 14 (collecting cases).  And "[u]nder New York law, it is well established that contract terms and other agreements may be incorporated by cross-reference." *Zachman*, 49 F.4th at 104.  Generally, courts consider two factors in determining whether a document has been incorporated by reference: "(1) whether the allegedly incorporated document is expressly identified and so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt, and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract."  *Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 279 (S.D.N.Y. 2022) (brackets and quotation marks omitted) (quoting *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 517 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019) (summary order)); *accord Maines Paper & Food Serv., Inc. v. Keystone Assocs.*, 23 N.Y.S.3d 398, 400 (3d Dep't 2015); *Gen. Ry. Signal Corp. v. L.K. Comstock & Co.*, 678 N.Y.S.2d 208, 209 (4th Dep't 1998).

The Forge Policy's single, fleeting reference to "arbitration proceedings" falls well short of this threshold.  To begin with, the "allegedly incorporated document[s]" – the Markel Policies – are not "expressly identified and so referred to and described in the instrument that the paper[s] may be identified beyond all reasonable doubt." *Volt*, 586 F. Supp. 3d at 279 (quotation marks omitted) (quoting *Miller*, 291 F. Supp. 3d at 517).  The Markel Policies are not mentioned in the Forge Policy, whether by name, number, or some other identifying feature.  Indeed, Section 8.2 does not reference a "document" of any sort – there is only a vague allusion to the possibility of arbitration proceedings (or court proceedings).  That is not enough to accomplish incorporation by reference.  *See Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 163 (S.D.N.Y. 2014) ("Courts have emphasized that incorporation by reference must meet an 'exacting standard'; vague references to documents not specifically identified do not suffice." (quoting *Shark Info. Servs. Corp. v. Crum & Forster Com. Ins.*, 634 N.Y.S.2d 700, 701 (1st Dep't 1995))); *4Connections LLC v. Optical Commc'ns Grp., Inc.*, 618 F. Supp. 2d 178, 183 (E.D.N.Y. 2009) ("'[V]ague allusions' to general classes of documents are insufficient to incorporate referenced documents." (quoting *Progressive*, 991 F.2d at 47 n.8)).  Further, the language in Section 8.2 of the Forge Policy that supposedly incorporates by reference the Markel Policies does not "clearly communicate[] that the purpose of the reference is to incorporate the referenced material into the contract." *Volt*, 586 F. Supp. 3d at 279 (quoting *Miller*, 291 F. Supp. 3d at 517).  Altogether, the single reference to "arbitration proceedings" – indeed, in the same breath as court proceedings – is too thin a reed to support AmTrust's assertion of incorporation by reference.  *See Rocco Rescelo & Son Plumbing & Heating, LLC v. Plank, LLC*, 143 N.Y.S.3d 421, 422 (3d Dep't 2021) (an agreement to arbitrate "must be in writing, must be clear, explicit[,] and unequivocal[,] and must not depend upon implication or subtlety" (quotation marks and citation omitted));

*Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (summary order) (deeming this principle "well settled" (quoting *Fiveco, Inc. v. Haber*, 893 N.E.2d 807, 809 (N.Y. 2008))).

As stated previously, AmTrust's argument that the Court should disregard the Forge Policy's Forum-Selection Provisions in favor of an agreement to arbitrate based on the Markel Policies relies on the prefatory phrase in the Forum-Selection Provision: "*Unless stated herein to the contrary*, this (Re)Insurance shall be governed by and construed in accordance with the laws of US New York and the exclusive jurisdiction of the US New York courts." ECF No. 1-1 at 32 (emphasis added). To be sure, the word "unless" clarifies that the Forum-Selection Provision is subject to overriding by other portions of the contract. *See, e.g.*, *Unless*, Oxford English Dictionary (2d ed. 1989; last updated July 2023), https://www.oed.com/dictionary/unless_adv (conj. 1.a: "Used to introduce a statement expressing a case in which an exception to a preceding (or following) statement will or may exist: except if, if . . [.] not" (ellipsis in original)); *Unless*, Am. Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=unless [https://perma.cc/MK5N-DL5E] (conj.: "Except on the condition that; except under the circumstances that"). Thus, an insurance dispute under the Forge Policy is subject to "the exclusive jurisdiction of the US New York courts" except if a different, more specific provision of the Forge Policy says otherwise. But because (as the Court has already explained) the Forge Policy does not incorporate by reference the Markel Policies' arbitration clauses, there is no provision of the Forge Policy that displaces the Forum-Selection Provisions. Therefore, the Forum-Selection Provisions – prescribing New York law applied in a New York court – apply.

AmTrust objects that Forge's interpretation would render Section 8.2 surplusage and, in particular, its reference to "arbitration proceedings." *See* Resp't Mem. at 12-13. New York law provides that insurance policies should be construed "in a way that affords a fair meaning to all

of the language employed by the parties in the contract and leaves no provision without force and effect." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016) (quoting *Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 991 N.E.2d 666, 671-72 (N.Y. 2013)).  But AmTrust's surplusage argument ignores that Section 8.2 does not mention only arbitration proceedings; it refers to hearing the matters together in the "same *court* or arbitration proceedings."  ECF No. 1-1 at 38 (emphasis added).  AmTrust ignores the disjunctive "or" and the reference to consolidated "court" proceedings.  Given the alternative routes set forth in this clause, there is a non-surplusage-creating reading of Section 8.2 that is consistent with the Court's holding that Forge has not agreed to arbitrate this insurance-coverage dispute.  Section 8.1 provides that the dispute-resolution provisions of the Primary Policy are incorporated into the Forge Policy.  There are no arbitration clauses in the Primary Policy and therefore no arbitration clause has been incorporated by reference into the Forge Policy that would impact the forum-selection clause present in the Forge Policy.  Given that there is no arbitration clause in either the Forge Policy or the Primary Policy (by incorporation), Section 8.2 provides that the disputes shall be heard together in the same court proceeding.  And this is precisely what took place in the Delaware court where AmTrust brought its claims against its numerous insurers, including Forge, to be "heard together" in the "same court" proceeding.[1]

In its reply brief, AmTrust insists that its "position is not that Forge agreed to be bound by the Markel [Policies] specifically, but that [Forge] agreed to generally join any proceeding, including arbitration, between AmTrust, Forge[,] and any Underlying Insurance provider."

---

[1] Section 8.2 can be reconciled with Section 8.1 if the Primary Policy is ever amended to permit (or even require) arbitration.  Under such circumstances, Section 8.1 would override the Forum-Selection Provisions, and Section 8.2's alternative reference to "arbitration proceedings" would take on new significance.

Resp't Reply at 5.  *But see* Resp't Mem. at 14 (arguing that "incorporation of the arbitration agreement set out in another contract is a recognized method of agreeing to arbitrate, even without Forge being a signatory to the Markel [Policies]").  AmTrust's consent-to-join-any-arbitration-proceeding contention fares no better than its incorporation-by-reference theory. Most importantly, Section 8.2's passing reference to "arbitration proceedings" in the same clause as "court" proceedings falls well short of the requirement that an agreement to arbitrate be "clear, explicit[,] and unequivocal."  *Fiveco*, 893 N.E.2d at 809 (citation omitted).  AmTrust has cited no court construing contractual language similar to the language used in Section 8.2 as an agreement to arbitrate, and the Court has been unable to locate any such case.  AmTrust's reading of Section 8.2 would mean that Forge's agreement to arbitrate and waiver of its right to have its claims heard in court (and the express forum-selection provisions) would depend on whether AmTrust and another third party were engaged in arbitration proceedings pursuant to a clause or agreement to which Forge was not a signatory and did not agree to incorporate by reference.  The Court will not endorse such an unreasonable interpretation – resulting in an unpredictable waiver of a party's right to pursue legal claims in court – absent stronger contractual language than is present here.  *See Cragg v. Allstate Indem. Corp.*, 950 N.E.2d 500, 502 (N.Y. 2011) ("Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured.").  Further, AmTrust's interpretation that Forge is essentially bound by the arbitration clauses of every arbitration clause in any other excess carrier's policy cannot be reconciled with Section 8.1 that references only the Primary Policy in terms of the dispute-resolution provisions that are incorporated into the Forge Policy.  *See* ECF No. 1-1 at 38.

AmTrust's interpretation of Section 8.2 is also unreasonable because it presumes that a consolidated arbitration trumps a consolidated court proceeding where, for example, two underlying insurers (in addition to Forge) are engaged in disputes with AmTrust, one in a court proceeding and the other in an arbitration proceeding.  After all, Section 8.2's language commanding that "disputes shall be heard together" applies to "court or arbitration proceedings," not just to "arbitration proceedings." *Id.*  Presumably because of the single-action clause in Section 8.2, AmTrust initially sued all of its insurers in Delaware court, *see generally* Del. Compl. – and moved to arbitrate with Markel and Forge only after Markel invoked its arbitration clause, *see* Answer to Verified Pet. and Countercl. ¶ 55.  There is no more of a basis for the consolidation envisioned by Section 8.2 to mandate arbitration rather than a consolidated court action, and indeed there is less of a basis because arbitration requires a "clear, explicit[,] and unequivocal" agreement to arbitrate.  *Fiveco*, 893 N.E.2d at 809 (citation omitted).  Indeed, if AmTrust's motion to compel is denied, AmTrust's claims against Forge will continue to be "heard together" in the same "court" proceeding with its claims against another excess insurer, Allianz.

AmTrust relies on *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005), in support of their argument that arbitration is required here.  *See* Resp't Mem. at 11-12.  In that case, the Second Circuit held that an arbitration clause was enforceable despite a subsequent agreement that set forth a forum-selection clause without mention of arbitration.  *See Bank Julius Baer*, 424 F.3d at 282-85.  In so holding, the court found that the clauses could be reconciled: the parties were required to arbitrate their dispute, but to the extent that a suit was filed in court (to enforce the award, for example, or to challenge the arbitration agreement's validity), such a suit would be filed in New York subject to the subsequent forum-selection clause.  *See id.* at 285.

AmTrust argues that, just as in *Bank Julius Baer*, the clauses in the Forge Policy can be reconciled in that the forum-selection clause "does not exclusively require litigation because [it] begins by admitting the possibility of another venue" through the inclusion of the "unless stated herein to the contrary" clause.  Resp't Mem. at 12 (original brackets and citation omitted).

 *Bank Julius Baer* does not control here for two reasons.  First, *Bank Julius Baer* treated the presumption in favor of arbitration as applying not only to the scope of issues covered by an arbitration agreement, but also to the question of whether an agreement to arbitrate existed in the first place.  *See* 424 F.3d at 284.  This reasoning (which, in no small part, motivated the court's holding) is foreclosed by *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 303 (2010), in which the Supreme Court explained that the "presumption favoring arbitration" applies "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute."  The Second Circuit has expressly recognized *Bank Julius Baer*'s abrogation on this point.  *See Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 215 n.3 (2d Cir. 2014). *Bank Julius Baer* therefore "is of limited precedential value" in the wake of *Granite Rock*.  *Ruiz v. New Avon LLC*, No. 18-cv-09033 (VSB), 2019 WL 4601847, at *9 (S.D.N.Y. Sept. 22, 2019).

 Second, even if *Bank Julius Baer* were still good law in all respects, it is inapposite.  To begin with, *Bank Julius Baer* did not (as AmTrust suggests) purport to provide a blanket rule for all cases involving potential conflicts between arbitration clauses and forum-selection clauses, let alone one that favors the enforceability of the arbitration clause.  Rather, it reconciled specific language included in two different agreements entered at separate times, which is not the case

here.  And AmTrust's argument that the Forum-Selection Provisions can be reconciled with the arbitration provision here – namely that the Forum-Selection Provisions anticipate the possibility of another venue by stating "unless stated herein to the contrary" – works only if there is a valid arbitration agreement in the first place that can then be reconciled with the forum-selection clause.  As explained, however, the Forge Policy does not contain an agreement to arbitrate, so *Bank Julius Baer*'s reconciliation approach does not apply.

In sum, the Court holds that the Forge Policy neither incorporates by reference the Markel Policies' arbitration clauses nor mandates that Forge must arbitrate simply because AmTrust is arbitrating with Markel.[2]  Thus, the Court denies AmTrust's motion to compel arbitration.

## II.  Forge's Motion for a Preliminary Injunction

The Court turns next to Forge's motion for a preliminary injunction.  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666-67 (2d Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  "A [party] seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Id.* at 667 (quoting *Winter*, 555 U.S. at 20).  All four factors are satisfied here.

### A.  Likelihood of Success

The first requirement for obtaining a preliminary injunction is "establishing that [the party] is likely to succeed on the merits."  *Id.* (quoting *Winter*, 555 U.S. at 20).  "To establish a

---

[2] Given this holding, the Court need not reach the issue of whether AmTrust waived its right to arbitrate and declines to do so.

likelihood of success on the merits, a [party] 'need not show that success is an absolute certainty. [It] need only make a showing that the probability of [its] prevailing is better than fifty percent.'" *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)).  As discussed above, the Court holds that Forge and AmTrust did not agree to arbitrate the insurance-coverage dispute.  Necessarily, the Court finds that Forge is likely – and indeed certain – to succeed on the merits of its claim that it is not required to arbitrate its claims with AmTrust.

### B.  Irreparable Harm

The second requirement for obtaining a preliminary injunction is showing that the party "is likely to suffer irreparable harm in the absence of preliminary relief."  *JTH Tax*, 62 F.4th at 667 (quoting *Winter*, 555 U.S. at 20).  "[A]n irreparable injury is 'an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation.'"  *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (quoting *Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995)).  "Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law."  *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011) (summary order) (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam)).  Because Forge did not agree to arbitrate this insurance-coverage dispute with AmTrust, it would suffer an irreparable injury if compelled to do so.  Hence, the irreparable-harm factor weighs in Forge's favor.

### C.  Balance of Equities

The third requirement for obtaining a preliminary injunction is establishing that "the balance of equities tips in [the party's] favor."  *JTH Tax*, 62 F.4th at 667 (quoting *Winter*, 555

U.S. at 20).  This factor also weighs in Forge's favor because (as already explained) Forge would suffer an irreparable injury if forced to arbitrate the insurance-coverage dispute with AmTrust, and AmTrust has suggested no countervailing equity that would counsel against granting injunctive relief.  *See, e.g.*, *Morgan Stanley & Co. v. Seghers*, No. 10-cv-05378 (DLC), 2010 WL 3952851, at *7 (S.D.N.Y. Oct. 8, 2010); *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, No. 08-cv-02152 (PKL), 2008 WL 759353, at *9 (S.D.N.Y. Mar. 20, 2008).

### D.  Public Interest

The fourth requirement for obtaining a preliminary injunction is showing that "an injunction is in the public interest," *JTH Tax*, 62 F.4th at 667 (quoting *Winter*, 555 U.S. at 20), or at least that the "injunction does not cause harm to the public interest," *U.S. Sec. & Exch. Comm'n v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) (per curiam). "There is a significant public interest in conserving judicial and arbitration resources by preventing duplicative proceedings."  *Morgan Stanley*, 2010 WL 3952851, at *7.  This factor therefore favors granting Forge's motion because if the parties participated in arbitration – only for a court, in an action for confirmation, to determine that arbitration was improper – the arbitrator's "decision on the merits would become a nullity, thus wasting the efforts of [the arbitrator] and the parties."  *Safra Sec. LLC v. BS Palladium Ltd.*, No. 19-cv-03213 (NRB), 2019 WL 4198680, at *2 (S.D.N.Y. Aug. 15, 2019).  The grant of an injunction here would also serve the "well-recognized public interest in enforcing contracts and upholding the rule of law." *Nimbus Therapeutics, LLC v. Celgene Corp.*, 570 F. Supp. 3d 100, 127 (S.D.N.Y. 2021) (citation omitted).

In sum, all four factors favor granting a preliminary injunction.

### III. Forge's Request for a Permanent Injunction

Only one point remains for consideration: whether to grant a permanent injunction instead of a preliminary injunction. Forge requested both forms of relief in its petition, *see* Pet. to Stay Arbitration at 6, but it requested only preliminary injunctive relief in its present motion, *see* Pet. Mot. at 1. Then, in its memorandum of law submitted in further support of its own motion as well as in opposition to AmTrust's subsequent motion to compel, Forge included a section requesting that, given the procedural posture of the case and the lack of any factual disputes, the Court should consolidate the motion for a preliminary injunction with one for a permanent injunction and "should enter a permanent injunction." Pet. Opp'n at 24 (capitalization omitted). AmTrust never addressed this argument in its reply brief. *See generally* Resp't Reply. Therefore, AmTrust has arguably forfeited any objection to considering Forge's request for a permanent injunction. *See Curry Mgmt. Corp. v. JMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief."); *P.C.R. v. Fla. Union Free Sch. Dist.*, No. 16-cv-09778 (KMK), 2022 WL 337072, at *22 (S.D.N.Y. Feb. 4, 2022) (a party "effectively concedes" an argument made in an opponent's memorandum of law if the party "does not respond to th[e] argument" (citation omitted)). *See generally Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017) ("Forfeiture is the failure to make the timely assertion of a right." (brackets and citation omitted)).

Regardless of any forfeiture, the Court agrees with Forge that, given the Court's determination that there is no agreement to arbitrate in the context of AmTrust's motion to compel, Forge has satisfied the elements necessary for a permanent injunction. "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the

exception that the [party seeking the injunction] must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (outlining the "well-established . . . four-factor test" for obtaining permanent injunctive relief).  Typically, there are "significant procedural differences between preliminary and permanent injunctions." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981).  But in this case – having ruled on AmTrust's cross-motion to compel – the Court has already ruled on the parties' "actual success." *Amoco*, 480 U.S. at 546 n.12; *see D.L. Cromwell Invs., Inc. v. NASD Regul., Inc.*, 279 F.3d 155, 160 (2d Cir. 2002) (court's failure to provide party opposing consolidation with advance notice of intent to consolidate preliminary-injunction proceedings with final trial on the merits was permissible where party "was on notice from the outset that its claim hinged on the issue to be decided at the preliminary injunction hearing," and where party could not "demonstrate that it suffered prejudice by consolidation").

Under these circumstances, the Court will exercise its "discretion to order such consolidation." *Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 131 F. Supp. 3d 73, 83 (S.D.N.Y. 2015).  In particular, the Court finds that AmTrust has been on notice that the fate of its motion to compel is intertwined with the Court's assessment of the merits of Forge's petition, especially given that the motions were briefed in a coordinated fashion at the suggestion of the parties. *See D.L. Cromwell*, 279 F.3d at 160.  The Court also finds that AmTrust will not be prejudiced by such consolidation because AmTrust has had a fair opportunity to present its arguments and evidence on all material issues. *See id.*

In turn, for the reasons stated above regarding Forge's request for a preliminary injunction, the Court concludes that all four factors point in favor of Forge receiving permanent

injunctive relief.  Specifically, the Court finds: "(1) that [Forge] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between [Forge] and [AmTrust], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay*, 547 U.S. at 391.  Hence, the Court grants Forge's request for a permanent injunction.

## CONCLUSION

For the foregoing reasons, AmTrust's motion to compel arbitration is DENIED.  The Court further GRANTS Forge's motion for a preliminary injunction as well as its request for a permanent injunction enjoining AmTrust from proceeding with the arbitration against Forge. The Clerk of Court is directed to enter judgment in favor of Forge's petition, terminate the motions (ECF Nos. 2, 16), and close this case.

Dated: October 19, 2023
      New York, New York

                              SO ORDERED.

                              JENNIFER L. ROCHON
                              United States District Judge